We will now proceed to the fifth case, Whitaker v. Wisconsin Department of Health. Good morning, Your Honors, and may it please the Court. My name is James Wolczewski and I represent the Plaintiff Appellant, Joyce Whitaker. At summary judgment, the Wisconsin Department of Health Services, or DHS, admitted that it knew Ms. Whitaker needed leave through December 27, 2010, and that she anticipated returning to work on December 28, 2010. In fact, the record shows that DHS was made aware of that date three times before it made the decision to fire her. Yet in granting summary judgment, the District Court claimed that Ms. Whitaker requested what amounted to indefinite or open-ended leave, rendering her unqualified for her position and causing an undue hardship. Because the District Court's determination directly conflicts with the undisputed facts and evidence in the record, this Court should overturn the District Court's summary judgment order and remand for trial. On September 8, September 24, and October 18, 2010, DHS was told that Ms. Whitaker needed leave through December 27, 2010. However, the record shows in response being made aware of that date a second time, on September 24, DHS internally stated it did not want to give her any leave beyond her FMLA leave. Similarly, in response to being told that date a third time on October 18, DHS told Ms. Whitaker it would only give her leave until November 5, 2010, and that it expected that she would return to work on November 8, even though it already knew that she could not return on that date. These facts demonstrate DHS's failure to engage in the interactive process with Ms. Whitaker. In response to these communications, as well as additional communications in November that DHS admittedly considered to be requests for accommodation, DHS did not engage Ms. Whitaker in the interactive process to determine what accommodations were available that would allow her to return to work. Instead, it ceased all accommodation communications and simply kept moving forward with her termination. What DHS has attempted to do is claim that the unpaid, finite leave that Ms. Whitaker requested would cause an undue hardship. That's why it's trying to get around the failure to accommodate. That requires that DHS make a detailed, factual showing of the significant difficulty or expense it would have incurred in accommodating Ms. Whitaker. However, it's a no such thing. Instead, it's offered nothing but sweeping generalizations about its operations and the job duties and responsibilities of its economic support specialists. So under the ADA, how long is an employer required to hold a job for somebody who's away? Well, there's no per se rule on the amount of leave that an employer is required to provide. It's going to be a case-by-case analysis. So as long as a jury might later determine would have been reasonable? Yeah, it's a question of undue hardship. It's going to be different depending on the circumstances of each case. So what's going to be reasonable for... So there's no safe harbor for an employer. They may have to leave the job open indefinitely. Indefinite leave is not going to be... Seven months? There's no set amount. While she was on leave, was Ms. Whitaker getting benefits? She was getting benefits until, I believe right from the late leave expired, and then she was paying out of pocket. Okay. For health and other benefits? Correct. Okay. And was she covered by a short-term disability plan? That I'm aware of, she was not receiving short-term disability records. Was she covered by a plan?  So in this case, beyond the fact that the generalizations don't suffice to prove undue hardship, there are also facts and evidence in the record that demonstrate that DHS cannot prove undue hardship in this case. For example, the record shows that DHS would not be disadvantaged. It wouldn't have to hold a position open for her during her period of leave because it was constantly hiring for economic support specialists before, during, and for years after her period of requested leave. Further, the record shows that DHS continued to operate the Milwaukee Enrollment Services Unit without Ms. Whitaker because it operated in multiple locations, each employing multiple, largely interchangeable economic support specialists who were able to share the workload. Further, the record shows that there was additional leave available to Ms. Whitaker at the time of her termination in the form of permissive leave. How is that? We've got the letters she got. This talks about a discretionary leave, right, beyond FMLA. There's contractual leave. But that leaves, that's left to the discretion of management, right? The contractual leave? Yes. I believe so. It's under the agreement with the county, I believe. Right. And it may not exceed 30 calendar days. The contractual leave, correct. Right. Permissive leave is different. Permissive leave, right. I thought permissive leave was contractual leave. Even though it's all discretionary, it's available in its term differently. So in this case, what Ms. Whitaker used was obviously the FMLA leave that ran through October 18. She had 30 days potentially allowable through contractual leave. That was provided until November 5th. Under DHS's policies, there was another form of leave available, and that's the permissive leave. And that's specifically available to employees who have exhausted both FMLA and contractual leave. Finally, the record should... Okay, but if I understand your argument correctly, the contractual leave and permissive leave are irrelevant because you're saying the ADA gave her a right to demand that as a form of accommodation, right? Essentially, yes. I mean, whatever you want to call it, it's leave at the end of the day, and that's what she requested, and that's what she needed. And I guess I'm struggling in this case with how the FMLA interacts with the Americans with Disabilities Act. Okay. Because, I mean, being extended, whether you want to call it finite or probably looked infinite to the employer at the time, unpaid leave looks an awful lot like FMLA leave. And we have a statute that limits that to you've got to be with the employer a certain amount of time. There's the 12-week limit. And you want to be arguing here for something much more indefinite, open-ended, and uncertain from an employer's standpoint. No, Your Honor. I'm not advocating indefinite leave by any stretch of the imagination. Well, I thought you just told me you couldn't impose any limits on this. Well, just speaking generally, I'm just saying there's no per se limit on the amount of leave that an employer should or could be allowed to provide under the law. So five years could be reasonable? Hypothetically. I mean, at some point, I'm guessing undue hardship would certainly kick in. Five years is a really long time. But, you know, what I'm saying is that, you know, particularly pursuant to the Supreme Court's holding in Barnett v. United Airways, certainly a specific amount of leave can't be ruled out from the get-go. It depends on the particular circumstances of the case, the particular circumstances of the employer, and all that comes back to undue hardship. So certainly at whatever point, you know, an employer can prove undue hardship, that's the end of it. But from an outset point of view, there's no per se limit on what could or should be provided under the law. I'm not advocating for indefinite leave because we have a return-to-work date of December 28th that's undisputed. So it's... Actually, it's not very clear to me. She asked for leave to run that long. Did she provide... Is there evidence that she provided information about the treatment she was receiving? There were two FMLA certifications on the front end. One was dated... One was in August. That stated what her... What she was suffering from and also that she was receiving treatment. I don't believe it specified the type of treatment that she was receiving. And then there was a second FMLA certification on September 8th, and that had the return-to-work date, or the period, the duration of leave through December 27th. That's her assertion, right? Well, that was the FMLA certification, and then subsequently there were two... It was a written... I'm sorry, an oral... communication of that date on September 24th, and then, again, she provided that in writing on October 18th. Granted, that was her writing it. That was not from her doctor, but it was a form from DHS. It was a leave-without-pay request authorization form or something like that that she filled out, again, stating that that specific date was the date that she needed. And, again, it's undisputed that DHS understood and knew that that was the leave that she was requesting, and that was what it knew at the time that it made the decision to terminate her employment. And, again, it's also... Did the employer have any evidence that she was receiving treatment that would enable her to return or was likely to enable her to return by that time? I don't believe that the employer ever requested any sort of that information. That's not my question. Did she ever provide it? I don't believe that she provided specific information of what treatment she was receiving at the time. If there are no other questions, I'm going to reserve the rest of my time for rebuttal. Thank you. Ms. Vandermuse? Good morning. I'm Assistant Attorney General Jennifer Vandermuse, and I represent the Wisconsin Department of Health Services. This court should affirm the district court because Ms. Whittaker failed to establish that she is an otherwise qualified individual under the Rehabilitation Act. Based on the evidence that she submitted at summary judgment, no jury could conclude that the additional nine weeks of leave she was requesting would enable her to return to work. But even if she had shown that she was an otherwise qualified individual, her failure to accommodate claims still fails as a matter of law. Now, I'd like to focus on the dispositive issue in this case, which is whether Ms. Whittaker established the threshold shouldering that she was an otherwise qualified individual under the Rehabilitation Act. An otherwise qualified individual is someone who can perform the essential functions of the job with a reasonable accommodation. The burden is on the plaintiff to put forth evidence sufficient to reach a jury on this issue. Now, it's undisputed that Ms. Whittaker, at the time DHS declined to grant her additional leave, could not perform an essential function of the job, namely regular attendance at work. So to survive summary judgment, Ms. Whittaker had to submit enough evidence to show that the additional leave she was requesting would enable her to return to work on a regular basis, and she failed to make that showing. In the record, we have a number of conclusory doctor's notes that state medical leave of absence until November 17, 2010, medical leave of absence until December 17, 2010. These notes provide absolutely no information about what Ms. Whittaker's medical condition was, whether she was receiving treatment, or whether she was able to return to work. We also have several naked assertions in her own declaration stating that she would have been able to return to work on December 28, 2010. Now, this declaration is simply insufficient in terms of weight to be put in front of a jury, and we know that because this court said in Weigel v. Target Stores that an affidavit submitted by a medical expert stating that the employee would be able to return to work was too conclusory and uninformative to reach the jury on the question of whether she would have indeed been able to return. Here, we don't even have a medical expert affidavit. We have a statement from Ms. Whittaker that is unsupported by any facts that she would be able to return to work. A plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and is not a qualified individual for Rehabilitation Act purposes. For this reason alone, DHS is entitled to summary judgment. Now, turning to my second point, even if for the moment we were to assume that she established that she was an otherwise qualified individual under the Act, no jury could conclude that DHS failed to reasonably accommodate Ms. Whittaker when it declined to grant her the two requirements to accommodate a claim. One, the person has to be a qualified individual with a disability, which I've already discussed she's not, but setting that aside for the moment. The second is that the employer was aware that the employee had a disability and was requesting an accommodation for that disability. DHS does not concede that it was aware at the time she made her October 18, 2010 leave without pay that it was aware she was requesting a disability accommodation, and we know that because based on this record, in the past, when Ms. Whittaker requested an accommodation for her back condition, she filled out the disability accommodation request form, noted back pain, and engaged in an interactive process with Affirmative Action Director who was asking for leave is to care for her father and to attend to her own medical condition, which is undescribed in the request. It was reasonable for DHS to infer that she was asking for something different here, that she was not asking for an accommodation. So therefore, the interactive process was not even triggered in this case, as stated in the EEOC Sears and Roebuck. We didn't even get to that step. But I will also note that in a letter dated October 15, 2010, Vanessa Robertson invited Ms. Whittaker to a meeting on November 18 and asked her to provide additional documentation or explanation that would assist them in their decision  move forward with medical separation. So to the extent there was additional interaction, I mean, there was no need for additional documentation on that. So we didn't even meet the second element in a failure-to-accommodate claim, but even setting that aside, the third element is that the employer failed to reasonably accommodate the employee. A plaintiff needs to make a prima facie showing that an accommodation is reasonable, and as this court stated in the Oconomowoc decision, an accommodation is reasonable if it's both efficacious or effective and proportional to the cost to implement it. Ms. Whittaker did not make a prima facie showing that the accommodation she requested was reasonable. And this is because she had asked for continuous leave under the FMLA from August 28, 2010 all the way through when she exhausted it, which was October 18, 2010. DHS granted all that leave to her, notified her that her leave would then be exhausted, but invited her, if she wanted to, to ask for a contractual leave of absence of up to 30 days. She asked for one. Do you agree there are these two different kinds? Plaintiff's counsel told us there's contractual leave and then there's something else? The permissive leave? Yes. I'm not aware of permissive leave being available. I wouldn't be surprised if that was a possibility, but the real point is that it's discretionary, that the employer doesn't have to grant it. And basically, what Ms. Whittaker was asking was for DHS to hold open her position for, based on their experience with her, an unforeseen amount of time to care for her father and for other reasons. And the employer is just not required to do that under the Rehabilitation Act. So the record evidence shows that the only accommodation she was asking for, which was this additional nine weeks of absence from work, was not a reasonable accommodation. But DHS also submitted evidence to show that this type of accommodation would impose an undue hardship. It's not disputed that every person who is in the economic support specialist position had to see six to ten people in person in order to meet the heavy workload that the organization was experiencing at the time. And it's also not disputed that had Ms. Whitaker not been at work, that workload would have had to be distributed to other employees. So this is concrete evidence of undue hardship. We really believe that the dispositive issue in this case is that Ms. Whitaker failed to establish she's an otherwise qualified individual under the Act. The Basman case and the Weigel v. Target Stores case establish the standards for looking at the evidence. The evidence in this record is even thinner than the evidence in those two cases. And for these reasons we believe that summary judgment is proper for DHS. And if there are no other questions I can conclude. Was Ms. Whitaker covered by short term disability? I don't know if the record speaks to that so I don't know the answer to that. And do you agree she was getting some benefits on leave? When she was on FMLA leave certainly. That ends when she goes off FMLA? Yes, I believe so. Okay. I guess I'll ask you the same general question. I'm struggling with this notion of open-ended leave as a reasonable accommodation under the ADA when we have the FMLA covering those kinds of issues. The FMLA      And so then I don't know the answer to that. I don't know the answer to that. I don't know the answer to that. I don't know the question is whether leave on top of that would ever be a reasonable accommodation. I think there are potentially cases out there where additional leave could be a reasonable accommodation but we have to meet this threshold requirement under the Rehabilitation Act and the ADA of whether that person is a qualified individual that would be able to perform the essential function of regular attendance with more leave. So we need some evidence in the record that would at least suggest that the additional leave as an accommodation would get that employee back to work and we simply don't have that here. So what would it take? A more specific letter from a doctor saying whatever the condition of the treatment is proceeding it's taking a little longer than we thought it would but she's still making good progress so I'm confident that by the beginning of January she'd be able to return. Would that be enough? Something like that would be much closer to the mark. If we had a doctor saying Ms. Whittaker is getting physical therapy and cortisone injections and that's going to take three weeks to get her back to work that would be evidence that would at least be able to be put in front of a jury on the  whether she was a qualified individual. Thank you. Thank you. All right. Thank you. Just a few things Your Honor. The first I mean the success of the leave is an undisputed fact in this case. Ms. Whittaker stated unequivocally that she would have returned on that date had she been accommodated and not terminated. So this case is really more similar to me to Baltimore versus Fort Wayne where she would have returned on that date however she was fired before that date ever came around. Additionally this case is different than cases like Fasden versus professional transportation and Weigel versus Target stores because in those cases there was no anticipated duration there was no return to work date there was no evidence of when the plaintiff would be allowed to return. For example in Weigel versus Target stores the court said that the clear import of the facts and evidence in that case is that perhaps the plaintiff would be allowed to return. We have that information here. It's a finite definite leave and we have undisputed evidence that she would have returned. Thank you Your Honor. The case is taken under advisement and our thanks to both counsel.